PER CURIAM.
The appellant, M.O. McC., is the stepmother of the child, P. McC., whom she is alleged to have abused by excessive corporal punishment. She seeks review of an order entered by the appellee, Department of Health and Rehabilitative Services, which denied her request to expunge her name from the child abuse registry. We reverse because we find there was not competent, substantial evidence to support the hearing officer’s conclusion that there was excessive corporal punishment. Corporal punishment must be excessive and produce injury to be considered child abuse under section 415.503, Florida Statutes (Supp. 1988).
P. suffers from emotional problems stemming from severe neglect, inconsistent discipline and an unnurturing early childhood environment while he was in the custody of his natural mother. These severe emotional problems were diagnosed after P., then aged seven, came to live with his natural father and his wife, the appellant. P.’s father sought professional advice and treatment for P. within the context of the present family unit. This family therapy had continued for several years and had resulted in substantial improvement in P.’s emotional condition at the time of the alleged abuse. The family and their therapist grounded the treatment program on a very structured environment for P. which provided that certain behaviors would not be tolerated and would result in certain punishment and that acceptable behavior would result in certain coveted rewards. Under this structured plan devised with the assistance of the licensed family therapist, direct disobedience to parents or teachers is considered a severe infraction which will result in a paddling. Based on their experience with P., both parents testified that paddling was the only effective form of discipline for P. when he crossed such a line of clearly unacceptable behavior.
In October, 1988, when P. was ten years old, two unavoidable changes occurred within his structured environment. He was assigned to a different teacher at a new school who was not a specialist in teaching the emotionally handicapped, and his father was called away from home for two months duty with the National Guard. During this time, the appellant was called to P.’s school and confronted with complaints that P. had been uncontrollable all week and that day had been very disruptive in the school cafeteria, openly defying the teacher in charge. The school staffers asked that the appellant take care of this problem. Up until this time, P.’s father had always been the one who administered the necessary discipline since P. always seemed to respond better to male authority figures.
Following the episode at the school, the appellant took P. home, and, in an attempt to continue the structure of clearly defined rewards and punishments that was proving beneficial to P., the appellant prepared to administer the necessary paddling consisting of four to five whacks. She told P. to grab on to the dining room table so that she could administer the required number of whacks to his buttocks. From the very first P. squirmed around, twisting and turning in an attempt to avoid the whacks. *1354 Because of this squirming, the paddle left what was described as two red marks approximately 1 and ⅝ inch long and ¼ to ½ inch wide on the unbroken skin of P.’s shoulder. At some time during the paddling, the paddle broke in two at a place where it had been glued together previously.
The red marks were still visible the next day prompting a day care worker to call in a report to the appellee of suspected child abuse. The following evening a child abuse investigator went to the home and interviewed the appellant and P. At this interview the appellant explained how the still-visible marks had been caused. P. admitted to the investigator that he deserved the paddling because he had been bad at school and did not seem fearful of the appellant, that his stepmother was fair with him and that he had no wish to be removed from the home.
As a result of the investigation, the ap-pellee notified the appellant that it would classify the report as confirmed child abuse and her name would be placed on the child abuse registry as a confirmed child abuser because she had caused the injury to P. and the injury resulted from excessive corporal punishment. The appellee did not file a dependency action and did not recommend any further action other than confirming the report. The appellant objected and a hearing was held at which the hearing officer received the evidence as outlined above.
There is no factual dispute here. The appellant admits administering the corporal punishment and there is sufficient evidence to support the factual determination of the hearing officer that P. received the red welts during the discipline.
We cannot, however, agree with the hearing officer’s legal conclusion that the appellant is a child abuser because we cannot agree that the corporal punishment inflicted here was excessive so as to be violative of section 415.503. See D.J. v. Dep't of Health & Rehabilitative Serv., 565 So.2d 863 (Fla. 2d DCA 1990). Compare B.R. v. Dep’t of Health & Rehabilitative Serv., 558 So.2d 1027 (Fla. 2d DCA 1989) (basing finding of child abuse on 24-hour bruise rule of agency improper). The hearing officer, in his report which was adopted by the appellee as its final order, was cognizant that the mere existence of the marks was not sufficient to support his conclusions:
8. The two red marks or welts on the child’s shoulder constitute temporary disfigurement and hence, physical injury. However, such evidence is not sufficient to support a finding of abuse, absent a finding that the corporal punishment was excessive. Reliance solely upon the existence of such a mark or bruise for the determination of abuse amounts to a denial of due process. B.L. and R.W.H., v. Department of Health and Rehabilitative Services, 545 So.2d 289 (Fla. 1st DCA 1989).
9. However, the existence of temporary disfigurement in this case is supplemented sufficiently to establish that the corporal punishment administered by [appellant] was excessive. [Appellant] failed to exercise sound judgement [sic] in the administration of the spanking applied to P.McC. That failure is established by [appellant’s] admissions that she continued hitting the child after hitting his shoulder with the paddle and also continued hitting him after the paddle broke.
10. [Appellant’s] conduct was particularly egregious in view of the nature of the instrumentality used to administer punishment as opposed to the size of the child, as well as the testimony of [appellant’s] expert witness, [the family therapist], that this child is more susceptible to devastation from excessive corporal punishment than other children. [Appellant] was not calmly exercising the rational behavior expected in the administration of corporal punishment as the “bottom line” in a code of discipline. As a result, that corporal punishment became excessive under the circumstances of this case.
*1355 It is clear that the code of discipline set up for P. by his father and stepmother with the aid of an outside professional was found acceptable by the hearing officer. The report then goes on to state that the hearing officer found the corporal punishment excessive because of the further indications that the appellant used a paddle, continued hitting P. after the paddle broke, and that this child is particularly susceptible to devastation from excessive corporal punishment.
While these further findings are factually grounded in the evidence, they provide no basis on which to conclude that child abuse occurred here. Based on P.’s testimony to the investigator, and similar testimony he gave at the hearing, there is no evidence that he suffered any “devastation.” After the discipline administered by the appellant, he showed no signs of fearfulness, thought his stepmother was fair to him, still wished to live with the appellant and, as the appellant testified, there were no more incidents at school of the type which gave rise to this paddling.[1] The discipline anticipated by this code includes spanking with a definite number of strokes by using a paddle. This the appellant did. The only deviation from the code of discipline was that one or more whacks landed on P.’s shoulder instead of on his buttocks. Both eyewitnesses to the incident, the appellant and P., testified that he was squirming and twisting around in an effort to avoid the whacks causing the blow(s) to land on his shoulder. In all other respects, the appellant was attempting to adhere to the structure of the disciplinary code as defined in the therapy program.
The fact that the paddle broke during the incident does not rise to a level to support the conclusions here. We do not find it significant that the paddle broke while the appellant was administering the accepted discipline. By the terms of the code, P. expects that any spanking he incurs may be administered with the paddle the appellant used. In fact, his father had used this paddle himself when administering prior spankings. There is no evidence that extraordinary force was used by the appellant during the paddling. The paddle simply broke at a place where it was weak due to a previous break, unrelated to any paddling, that had been repaired with common white school glue. We disagree with the hearing officer’s conclusion that the appellant did not exercise sound judgment in paddling P. under the circumstances of this case. We perceive no deviation on the appellant’s part in her attempts to guide P.’s development through adherence to the code of discipline and cannot accept as supported by the facts before him the statement by the hearing officer that the appellant was “not calmly exercising the rational behavior expected in the administration of the corporal punishment as the ‘bottom line’ in a code of discipline.” There is no evidence that an inordinate number of whacks were applied outside the parameters of the disciplinary code under which the parties were working nor that extraordinary force was used. The appellant should not be classified a child abuser based on good faith adherence to conduct that was part of a therapeutic plan outlined and ratified by her husband with the aid of the outside expert and which had resulted in improving P.’s emotional condition.
Accordingly, we reverse the final order appealed and remand with directions to the appellee to expunge the appellant’s name from the child abuse registry.
SCHEB, A.C.J., and DANAHY and ALTENBERND, JJ., concur.

. There is subsequent evidence showing that a short time later P. misbehaved to such a degree in another episode to warrant another paddling. The appellant was fearful of administering another paddling because of the HRS investigation the instant incident had occasioned. Because of all the other evidence of P.’s deteriorating emotional condition caused by the disruptions in his structured environment as outlined above, his stepmother was unable to further deal with disciplining P. In consultation with P.’s father, the therapist recommended that P. be admitted to an in-patient facility for treatment where he remained for almost two months. Upon release from this facility, P. rejoined the family unit and the out-patient therapy continued. At the time of the hearing, P. continued to show improvement.